United States District Court
Middle District of Florida
Jacksonville Division

DAVID ROBBINS,

     *Plaintiff,*

v.                                          **No. 3:13-cv-1123-J-34PDB**

COMMISSIONER OF SOCIAL SECURITY,

     *Defendant.*

---

## Report & Recommendation

David Robbins appeals the Social Security Administration's ("SSA's") denial of his most recent claims for disability-insurance and supplemental-security-income benefits.[1] Doc. 1. The parties have briefed their respective positions.[2] Docs. 19, 24. Mr. Robbins seeks reversal; the Commissioner, affirmance. Concluding that substantial evidence supports the Administrative Law Judge's ("ALJ's") decision, I recommend affirmance.

---

[1]Mr. Robbins had previously filed applications for disability-insurance and supplemental-security-income benefits, which an ALJ denied following a January 2009 hearing. Tr. 13. An Appeals Council denied his review request in July 2009. Tr. 13.

[2]Mr. Robbins's memorandum, Doc. 19, exceeds the 25-page limit established in Local Rule 3.01(a). Counsel is cautioned to abide by the Court's rules in all future filings.

## I.     Procedural History

Mr. Robbins alleged that he had become disabled on June 25, 2006, due to bipolar disorder, depression, post-traumatic stress disorder, a gunshot wound, a bulging disc, chronic pain from his knee to his foot, reliance on a cane to walk, arthritis in his right hip, and diabetes. Tr. 165. The SSA denied his claims both initially and on reconsideration. Tr. 67–88. An ALJ conducted an evidentiary hearing and found that he was not disabled. Tr. 13–25, 31–64. An Appeals Council denied his review request. Tr. 1–3. This case followed. Doc. 1.

## II.    Issues

Mr. Robbins presents two issues: (1) whether the ALJ erred in rejecting functional limitations in an evaluation from Atlas Physical Therapy, and (2) whether the ALJ erred in evaluating his credibility. Doc. 19 at 1, 21–28.

## III.   Background

At the hearing before the ALJ, Mr. Robbins and Melissa Brooks (an impartial vocational expert) testified. Tr. 32. Mr. Robbins was represented by counsel. Tr. 13, 33. He was 47 on his alleged onset date. Tr. 35. He has a tenth-grade education. Tr. 35. He has worked as a production assembler, industrial-truck operator, security guard, electrician helper, and heavy-truck driver. Tr. 56. He last worked at the substantial-gainful-activity level on June 25, 2006. Tr. 165. After the SSA denied his initial disability applications, he started working as a parking-lot security guard at a bar. Tr. 37–38. On his third day of work, he was shot in the mouth during an armed robbery, Tr. 37–38, requiring a three-day hospital stay, Tr. 329–36.

Mr. Robbins testified as follows. He has used a cane since 2007. Tr. 36. He has arthritis in his hip, two bulging discs in his back, and nerve damage. Tr. 36. He is unable to put pressure on his right foot or leg. Tr. 37. Those impairments, as well as a pinched nerve in his back, a fractured disc in his back, and severe headaches arising from the gunshot wound combine to prevent him from working. Tr. 43–44. His medications do not provide much relief. Tr. 45. He drives to and from the doctor's office about once a month. Tr. 37. He cannot walk long distances. Tr. 45. No doctor has told him that he is unable to work or must limit particular activities. Tr. 46. He has difficulty getting around. Tr. 47. He often remains in bed for two-thirds of the day and has to lie down when his leg hurts. Tr. 47. He is limited in his ability to bend, stoop, or stand. Tr. 50. He has headaches three or four times a day, and they last 30 minutes to several hours. Tr. 51. He has had depression and nightmares since he was shot. Tr. 52. He believes he is unable to perform any job that requires him to sit most of the day because sitting too long bothers his back. Tr. 52. He needs to stand up after sitting for about 20 or 30 minutes, and he can stand for only 20 to 30 minutes at a time. Tr. 52–53. He has to lie on his right side for two to three hours, three to five times a day, before resuming any activity. Tr. 53. He has problems with short-term memory, attention, and concentration. Tr. 53–54. In a November 2010 function report completed about one year before the hearing, he stated that he can care for personal hygiene, prepare simple meals in the microwave, do laundry twice a month, shop for groceries once a month, and fish once or twice a month. Tr. 208–11. He clarified at

the hearing that he sits or lies down in his truck for two-thirds of the day and no longer fishes. Tr. 47, 53.

A June 28, 2007, x-ray of Mr. Robbins's lumbar spine showed a compression fracture, thoracolumbar degenerative changes, no destructive lesions, and good vertebral alignment. Tr. 373. An August 20, 2007, MRI of his lumbar spine showed mild anterior wedging, mild degenerative changes, a possible arachnoid cyst, and normal alignment. Tr. 377–79. A June 7, 2011, CT scan of his lumbar spine showed post-traumatic changes, degenerative disc disease with a bulging disc and mild central canal narrowing, and facet arthropathy. Tr. 513. The interpreter found no significant changes between the 2007 MRI and the 2011 CT scan. Tr. 513.

Dr. Lynn Harper-Nimock evaluated Mr. Robbins on January 11, 2007, and made the following observations. Tr. 282–86. He had a limp to the right, could not walk on heels and toes, did not use an assistive device to walk, could not tandem walk, needed no help changing for the examination, was unable to get onto the examination table, and had difficulty rising from his chair. Tr. 283. There was no evidence that he had delusions or hallucinations and no indication that his memory, insight, or judgment were impaired. Tr. 283. His hand and finger dexterity were intact, and he had full grip strength. Tr. 284. He had decreased range of motion in his cervical, thoracic, and lumbar spinal ranges and paraspinous muscle spasms in his lower lumbar region. Tr. 284. He had full strength in his arms and legs and no muscle atrophy. Tr. 284. She opined that his prognosis was poor and that he had

4

moderate to marked limitations in standing, walking, climbing, and heavy lifting. Tr. 284.

Dr. Stephen Meritt evaluated Mr. Robbins six months later, on June 20, 2007. Tr. 313–14. He observed that Mr. Robbins might have some leg swelling. Tr. 313. He observed that his gait was pronated, he had an "extremely limited" range of motion in his right foot and ankle, and he had pain and instability in his right ankle. Tr. 314. He diagnosed right lateral ankle instability with pain in that joint. Tr. 314. He discussed Mr. Robbins's options, including surgery and bracing, and he recommended that he buy an ankle brace. Tr. 314.

Dr. William Buckingham evaluated Mr. Robbins about 15 months later, on October 2, 2008. Tr. 298. Dr. Buckingham stated that he was uncertain of the etiology of his pain, but it did not appear to be "an obvious orthopedic problem." Tr. 298.

Dr. Kenneth Hentschel evaluated Mr. Robbins later that month, on October 28, 2008, and he indicated that he was uncertain of the etiology of Mr. Robbins's chronic lower back pain. Tr. 297. He also observed that an EMG screening showed no pattern of significant radiculopathy. Tr. 297.

Dr. Justin Lindquist evaluated Mr. Robbins about four months later, on February 17, 2009. Tr. 291–92. Dr. Lindquist observed that several diagnostic studies since March 2008 had failed to find any etiology for his pain. Tr. 291. Dr. Lindquist opined that his peripheral neuropathy could be related to diabetes and his chronic pain could be related to trauma. Tr. 291. Dr. Lindquist recommended that he follow up with pain management. Tr. 291.

Dr. Timothy Sternberg evaluated Mr. Robbins about one year later, on March 12, 2010, and made the following observations. Tr. 386–90. He had full strength in his arms and legs, diffuse tenderness in his lumbosacral spine, and decreased range of motion with flexion and extension in his back. Tr. 388. An x-ray and MRI of his right hip showed no obvious abnormality, and an x-ray and MRI of his lumbar spine showed some mild degenerative changes. Tr. 388–89. Dr. Sternberg opined that his disability was "beyond what can be explained by known pathology." Tr. 389. Dr. Sternberg recommended that he follow up with his primary-care physician to obtain medications and perform exercises such as stretching and walking. Tr. 389–90. Mr. Robbins refused epidural steroid injections, explaining that they had not helped in the past. Tr. 390.

Jessica Anderton, Psy.D., evaluated Mr. Robbins's mental residual functional capacity about five months later, on August 4, 2010, and made the following findings. Tr. 392–97. His thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia; his affect was distinctly depressed; and his mood was dysthymic. Tr. 394. His attention and concentration were impaired due to his psychiatric disorder and physical discomfort. Tr. 395. His recent memory and remote memory were impaired. Tr. 395. His cognitive functioning was average, his insight was fair to good, and his judgment was good. Tr. 395. His attention and concentration were good, and he did not evidence significant emotional distress. Tr. 395. She opined that he had the ability to follow and understand simple directions and instructions, but his ability to independently perform complex tasks was

impaired. Tr. 396. She opined that his ability to maintain a regular schedule, make appropriate decisions, relate adequately with others, and appropriately deal with stress was impaired. Tr. 396. She opined that his ability to learn new tasks was generally intact but was undermined by his attention problems. Tr. 396. She diagnosed him with (1) major depressive disorder, severe, and (2) post-traumatic stress disorder and found that his prognosis was guarded. Tr. 396–97.

Dr. Ciceron Lazo evaluated Mr. Robbins that same week, on August 10, 2010, and made the following observations. Tr. 399–404. He appeared to be in mild distress but had no difficulty getting on and off the examination table or getting in and out of a chair. Tr. 400. He had no pain in his spine on palpation but had a mildly decreased range of motion of his thoracolumbar spine. Tr. 401. He had full arm, leg, and grip strength and good range of motion in his arms and legs. Tr. 401. He was able to heel, toe, and tandem walk, although heel walking reportedly caused right-heel pain. Tr. 401. He was able to squat about one-third of the way down with pain. Tr. 401. He did not need a cane to walk but used one to reduce pain. Tr. 401.

In a report completed about four months later, on December 2, 2010, a state agency physician opined that Mr. Robbins was capable of light exertion with some postural and environmental limitations. Tr. 442–49.

The following year, on November 4, 2011, Dr. Ronald Koury examined Mr. Robbins. Tr. 585–87. Dr. Koury observed that he was not in acute distress, he had no motor or sensory deficits, and his gait was normal. Tr. 586.

Mr. Robbins visited Atlas Physical Therapy later that month, on November 18, 2011. Tr. 492. A kinesiotherapist (a therapist who treats ailments through rehabilitative exercise and education) and a physical therapist evaluated him and observed that he used a cane and had a moderate to significant limp on his right side but was able to walk independently for short periods of time. Tr. 492. He "maintained consistent postural guarding and bracing" and frequently changed position, alternating between sitting and standing. Tr. 492. He stated that he had pain in his lower back, radiating into his right hip, leg and foot, as well as facial pain and debilitating headaches six to ten days a month. Tr. 492. He reported his pain as a two out of ten at the time, although he had rated his pain as an eight within the previous 30 days. Tr. 492. He was able to consistently exert himself during testing, and there were no overt findings of inappropriate pain focus or abnormal pain symptoms. Tr. 492. He had moderate grip weakness in both hands. Tr. 492. His test results suggested that he had significant functional limitations that would affect his ability to safely perform sedentary work. Tr. 492. He also would be limited in his ability to work on a sustained and frequent basis due to his inability to sit, stand, and walk for prolonged periods and his reported need to lie down intermittently for a total of five to six hours a day. Tr. 492.

The therapists opined that Mr. Robbins had the following functional limitations. Tr. 493–94. Due to his back pain, Mr. Robbins can carry a maximum of five pounds occasionally, can lift five pounds occasionally from knuckle-level to shoulder-level, can lift up to three pounds overhead occasionally, and can

continuously reach but should avoid pushing, pulling, floor-to-knuckle lifting, and 12-inch knuckle lifting. Tr. 493. He also should avoid bending, squatting, kneeling, crawling, twisting, and stooping due to back pain and should avoid climbing stairs and ladders due to leg pain. Tr. 493. He can perform fine and gross movements of his hands and feet. Tr. 493. He can sit up to 30 minutes at a time, stand up to 15 minutes at a time, walk up to 15 minutes at a time, sit two to three hours a day, and stand or walk up to an hour a day. Tr. 493. He can drive an automatic-transmission car up to 30 minutes at a time and up to an hour a day but should avoid driving a car with manual transmission. Tr. 493. He has a 20 percent deficit in grip strength in his right hand and a 15 percent deficit in his left hand. Tr. 494.

## IV.    The ALJ's Decision

The ALJ found that, although Mr. Robbins alleged a June 25, 2006, onset date, any claim of disability concerning the period before January 26, 2009, was res judicata because his previous disability claims had been denied as of that date and he had not presented any new and material evidence that would warrant reconsidering the earlier denials. Tr. 13. Mr. Robbins remained insured through December 31, 2011. Tr. 13. As such, to be eligible for disability-insurance benefits, he had to prove that he had become disabled by that date. Tr. 13–14.

At step two,[3] the ALJ found that Mr. Robbins has severe impairments of obesity, disorders of the spine and hips, headaches, diabetes mellitus, and status post-

---

[3]The SSA has established a five-step sequential process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). Under the process, the ALJ asks: (1) is the claimant currently engaged in substantial gainful activity; (2) does the claimant

gunshot wound. Tr. 16. She found no mental impairments and gave limited weight to Dr. Anderton's opinions for the stated reason that they were internally inconsistent. Tr. 16–18. At step three, she found that his impairments, when considered either individually or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart B, App'x 1. Tr. 18.

After stating that she had considered Mr. Robbins's testimony and the evidence in the record, the ALJ determined that he has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he is further limited to (1) occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; (2) no climbing of ladders, ropes, and scaffolds; and (3) no concentrated exposure to hazards, such as machinery or heights. Tr. 19. In doing so, she gave "great weight" to the state agency physician's opinion. Tr. 22.

The ALJ did not credit Mr. Robbins's testimony concerning the intensity, persistence, and limiting effects of his pain and other symptoms to the extent that it was inconsistent with that residual functional capacity. Tr. 20. She found that the objective medical evidence did not provide "strong support" for his allegations of

---

have a severe impairment or combination of impairments; (3) does the impairment meet or equal the severity of the specified impairments in the Listing of Impairments; (4) based on a residual-functional-capacity assessment, can the claimant perform any of his past relevant work despite the impairment; and (5) given the claimant's residual functional capacity, age, education, and work experience, are there a significant number of jobs in the national economy that the claimant can perform. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). Here, Mr. Robbins's arguments concern only the ALJ's residual-functional-capacity assessment.

disabling symptoms and limitations. Tr. 20. She observed that "[d]espite comprehensive evaluation and diagnostic testing by a number of different specialists, the cause for the severity of [his] subjective complaints could not be identified." Tr. 22. She also observed that the records did not show that his impairments had significantly worsened since his previous disability claims were denied, and no treating or examining physician had advised him that he was unable to work. Tr. 22. She observed that he was able to perform several activities, and his primary-care physician and a consulting pain specialist had recommended exercise. Tr. 20, 22. She gave the residual-functional-capacity assessment from Atlas Physical Therapy no weight because (1) it was not signed by a physician, (2) it appeared to be generated as evidence for the disability hearing rather than to establish care or obtain treatment, (3) it appeared to be based only on Mr. Robbins's complaints of headaches and his status following his gunshot wound, but many of the limitations were unrelated to those complaints, and (4) it was inconsistent with other evidence, such as other doctors' advice to remain active and recent examinations with normal findings. Tr. 23.

At step four, based on that residual functional capacity and the vocational expert's testimony, the ALJ found that Mr. Robbins could perform his past relevant work as a security guard and production assembler. Tr. 23–24. At step five, she alternatively found that he could perform other available jobs in the national economy; specifically, cashier II, ticket seller, and dresser. Tr. 24–25.

11

## V.     Standard of Review

A court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports his findings. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is "less than a preponderance"; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Id.* at 1211–12.

## VI.    Analysis

### A.    *Substantial evidence supports the ALJ's rejection of the opinions from Atlas Physical Therapy.*

Mr. Robbins first argues that the ALJ erred in rejecting opinions from Atlas Physical Therapy concerning his functional limitations. Doc. 19 at 21–27. An ALJ must give considerable weight to a treating physician's opinion unless she shows good cause for not doing so. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists if (1) the evidence did not bolster the treating physician's opinion, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his own medical records. *Id.* at 1240−41. If an ALJ disregards a treating physician's opinion, she must clearly articulate her reasons for doing so. *Id.*

An ALJ also must consider other medical-opinion evidence, regardless of its source. 20 C.F.R. §§ 404.1527(b), 416.927(b). She must consider several factors in determining the weight to give to any medical opinion, including the physician's

12

examining and treatment relationship with the claimant, if any, the opinion's supportability and consistency, the physician's specialization, and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

The ALJ provided four reasons for rejecting the opinions in the Atlas Physical Therapy evaluation: (1) the form was not signed by a physician, (2) it was produced for the disability hearing and not for any treatment or care, (3) many of the limitations listed in the evaluation were unrelated to the complaints that formed the basis of the opinions, and (4) it was inconsistent with other evidence. Tr. 23. Substantial evidence supports all but one of those reasons.

First, the ALJ rejected the opinions because a physician did not sign the form on which they had been provided. Tr. 23. The evaluation form confirms that finding. Tr. 492. Only "acceptable medical sources" may provide medical opinions and be considered treating sources. SSR 06-03p, 71 Fed. Reg. 45593, 45594 (Aug. 9, 2006); 20 C.F.R. §§ 404.1502, 404.1527(a)(2), 416.902, 416.927(a)(2). Therapists—such as the kinesiotherapist and the physical therapist who signed the Atlas Physical Therapy evaluation—are not acceptable medical sources; rather, they are considered other medical sources. *See* 20 C.F.R. §§ 404.1513(a) (listing acceptable medical sources); 416.913(a) (same); 404.1513(d) (identifying therapists as other medical sources); 416.913(d) (same). Because only the therapists signed the form, it reflects their opinions, rather than the opinions of a physician. The evaluation therefore did not provide medical opinions from a treating source, and the ALJ was not required to give any extra weight to it. *See Ithier v. Astrue*, No. 1:11-cv-238-GRJ, 2013 WL

13

1092197, at *6 (N.D. Fla. Mar. 14, 2013) (unpublished) (other medical source's opinions not entitled to any particular weight); *Yerger v. Astrue*, No. 8:11-cv-1944-T-30TBM, 2012 WL 5907056, at *4 (M.D. Fla. Nov. 5, 2012) (unpublished) (other medical source's opinions not entitled to deference but may be considered with other evidence). As such, substantial evidence supports the ALJ's first reason for rejecting the Atlas Physical Therapy functional limitations.

Second, the ALJ found that the opinions appeared to have been given for the disability hearing rather than for establishing care or treatment. Tr. 23. The record confirms that finding; the evaluation form is the only record from Atlas Physical Therapy. *See generally* Tr. 266–604. An ALJ generally will give more weight to a treating source than to other examining or nonexamining sources and may consider, among other things, the length, nature, and extent of any treating relationship in weighing opinions. 20 C.F.R. §§ 404.1527(c)(2) (listing factors to consider in evaluating medical opinions), 416.927(c)(2) (same); *see* SSR 06-03p, 71 Fed. Reg. at 45595 (stating that factors for considering opinions from acceptable medical sources may be used to consider opinions from other medical sources). The Atlas Physical Therapy evaluation does not contain any diagnoses, recommendations, or treatment plans. *See* Tr. 492–94. At the hearing, Mr. Robbins stated that he had visited Atlas Physical Therapy at his lawyer's request. Tr. 54. Thus, even if a physician had completed the evaluation, Atlas Physical Therapy had no treating relationship with Mr. Robbins, and the opinions therefore are less weighty than if a treating source had

rendered them. Substantial evidence therefore supports the second reason for rejecting the Atlas Physical Therapy functional limitations.

Third, the ALJ found that although the opinions appeared to be based only on Mr. Robbins's complaints of headaches and pain following a gunshot wound, many of the limitations did not relate to those complaints. Tr. 23. Substantial evidence does not support this reason for rejecting the evaluation. Although the "Complaints" section at the top of the form lists only "Post Gunshot to face, Headaches," the remainder of the evaluation shows that the evaluators considered Mr. Robbins's back pain and leg pain. *See* Tr. 492–94. Indeed, the evaluating therapists indicated that the limiting factor for every functional ability in which they found Mr. Robbins limited was either back or leg pain. Tr. 493. As such, they based most or all of their opinions on Mr. Robbins's back and leg pain. The ALJ therefore was incorrect in determining that the functional limitations were inconsistent with the types of complaints that Mr. Robbins had reported. Because substantial evidence supports her other independent reasons for rejecting the Atlas Physical Therapy functional limitations, that error was harmless.

Fourth and finally, the ALJ rejected the opinions because they were inconsistent with other medical evidence. Tr. 23. She cited as examples other physicians' advice to remain active and recent physical examinations with normal findings. Tr. 23. Substantial evidence supports that determination. As the ALJ had mentioned earlier in her decision, Dr. Sternberg had evaluated Mr. Robbins on March 12, 2010, and had recommended that Mr. Robbins follow up with his primary-care

15

physician to obtain medications and perform exercises such as stretching and walking. Tr. 21, 389–90. Furthermore, Dr. Koury examined him on November 4, 2011, and observed that he was not in acute distress, he had no motor or sensory deficits, and his gait was normal. Tr. 22, 586. The ALJ cited other evidence that supports her determination. She observed that several examining and treating physicians (Drs. Buckingham, Hentschel, Lindquist, and Sternberg) opined that they could not identify the cause of Mr. Robbins's reported pain level. Tr. 21, 291, 297–98, 388–89. She also observed that Dr. Lazo's August 2010 examination was "relatively unremarkable." Tr. 21, 399–402. Thus, substantial evidence supports three of the four independent reasons for rejecting the opinions of Atlas Physical Therapy.

Mr. Robbins argues that the ALJ substituted her own opinions for those of the therapists at Atlas Physical Therapy. Doc. 19 at 24–25. But, as explained, most of her reasons for rejecting those limitations are valid. Indeed, the relevant regulations and case law allow an ALJ to consider (1) whether the evaluator was a physician or other medical source, 20 C.F.R. §§ 404.1512, 416.912; (2) whether the evaluator saw the claimant in a treating or examining role, 20 C.F.R. §§ 404.1527(c), 416.927(c); and (3) whether the opinions are consistent with the evaluator's own objective findings and with other evidence in the record, *Phillips*, 357 F.3d at 1240–41. The ALJ therefore did not impermissibly substitute her own opinions for those of the therapists.

Mr. Robbins also argues that the ALJ ignored other relevant evidence that supports the Atlas Physical Therapy functional limitations. Doc. 19 at 25–26. As an initial matter, the ALJ did not ignore the evidence Mr. Robbins cites; she stated that

16

she considered the entire record in determining his residual functional capacity. Tr. 19. "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quotations omitted). That some evidence may have supported the Atlas Physical Therapy functional limitations is immaterial; the Court may not reweigh evidence or substitute its opinion for the ALJ's, and substantial evidence is "less than a preponderance" and "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *See Moore*, 405 F.3d at 1211. The evidence the ALJ cited adequately supports her conclusions. Because she gave several reasons, supported by substantial evidence, for rejecting the evaluation, she did not err in excluding its more severe limitations from her residual-functional-capacity determination.

To the extent that Mr. Robbins argues that the ALJ failed to properly evaluate other medical opinions or state the weight she gave them, he does not adequately develop that argument. At the end of his first argument (which is titled "The ALJ Improperly Rejected the Opinion of Mr. Robbins' Treating Physician" and apparently refers to the Atlas Physical Therapy functional limitations), he adds a generalized statement that the ALJ did not explain the weight she assigned to "the various medical opinions" or "provide a legally sufficient explanation for discounting or rejecting certain opinions of treating physicians, examining physicians, and non-

17

examining physicians." Doc. 19 at 26–27. Although he summarizes the findings of Dr. Harper-Nimock, a consultative examining physician, and Dr. Meritt, a treating podiatrist, Doc. 19 at 21, he does not indicate how their findings and opinions conflict with the ALJ's decision.[4] "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). By failing to develop arguments in this regard, Mr. Robbins has not satisfied that burden.

In any event, the ALJ observed that any disability allegations concerning the period before January 26, 2009, were res judicata because the SSA had denied his prior disability claims covering that period and he had not provided any new and material evidence that would require her to reconsider those denials. Tr. 13. She further stated that "[a]ny discussion of evidence from that period is solely for the purpose of assessing [his] credibility and is not an implied reopening." Tr. 13. In other words, the ALJ did not consider the opinions of Drs. Harper-Nimock or Meritt (which were dated January and June of 2007, respectively) except to assess credibility because they predated his earliest possible onset date by more than a year. He does

---

[4]Mr. Robbins also cites the opinions of Jessica Anderton, Psy.D., to support his argument that the ALJ erred in rejecting the Atlas Physical Therapy evaluation. Doc. 19 at 22, 26. Unlike the evaluations of Drs. Harper-Nimock and Meritt, the ALJ discussed Dr. Anderton's opinions but gave them "limited weight" because they were internally inconsistent and not supported by her own objective findings. Tr. 18. Mr. Robbins does not challenge those reasons, *see generally* Doc. 19, and, in any event, substantial evidence supports them; specifically, Dr. Anderton observed that his attention and concentration were both impaired and good, and she opined that his recent memory was impaired even though he had no difficulty with instant-recall exercises, *see* Tr. 395.

not contest her determination that any allegations of disability predating January 26, 2009, are res judicata. *See generally* Doc. 19.

Furthermore, Dr. Harper-Nimock opined that Mr. Robbins had "moderate to marked limitations in standing, walking, climbing, or heavy lifting." Tr. 284. Mr. Robbins makes no effort to explain how that opinion conflicts with the ALJ's determination that he can perform a reduced range of light work. At the very least, those limitations are not inconsistent with sedentary work, which mostly involves sitting, and at least one of the jobs the vocational expert identified at step five—dresser—requires only sedentary exertion. Tr. 25. Moreover, Dr. Harper-Nimock evaluated Mr. Robbins only once; as such, the ALJ did not have to defer to her opinion or give it controlling weight. *See* 20 C.F.R. §§ 404.1527(c) (stating that ALJ will give more weight to treating physician), 416.927(c) (same); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). And her opinions concerning Mr. Robbins's residual functional capacity were not medical opinions because they addressed issues reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (stating that opinions concerning residual functional capacity are not medical opinions), 416.927(d)(2) (same). As such, even if she had been a treating physician, those opinions, although relevant evidence, would not be entitled to controlling weight. *See Beegle v. Comm'r of Soc. Sec.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."). As to Dr. Meritt, he did not provide any opinion concerning Mr. Robbins's functional limitations. *See*

*generally* Tr. 313–14. In short, Mr. Robbins's summary argument that the ALJ failed to properly evaluate other medical opinions or state the weight she gave them fails.

**B.**     ***Substantial evidence supports the ALJ's credibility finding.***

Mr. Robbins also argues that the ALJ erred in evaluating his credibility concerning his subjective complaints of pain. Doc. 19 at 27–28. In evaluating a claimant's subjective complaints of pain or other symptoms, an ALJ must determine whether there is an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptom arising from that condition or (2) evidence that the condition is so severe that it can be reasonably expected to cause the alleged symptom. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the objective medical evidence does not confirm the alleged severity of a claimant's symptom, but an impairment can be reasonably expected to cause that alleged severity, an ALJ must evaluate the intensity and persistence of his alleged symptoms and their effect on his ability to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). When an ALJ does not credit a claimant's testimony about the intensity, persistence, and limiting effects of a symptom, such as pain, she must provide "explicit and adequate reasons for doing so." *Holt*, 921 F.2d at 1223. On review, a court should ask not whether the ALJ could have reasonably credited a claimant's testimony, but whether the ALJ had been clearly wrong in discrediting it. *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Mr. Robbins asserts that the ALJ gave only one reason for rejecting his complaints of pain: They were inconsistent with her residual-functional-capacity

assessment. Doc. 19 at 28. That assertion is incorrect. Although she found that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment," Tr. 20, she also provided several more reasons for finding him incredible. She observed that he could care for his personal needs, do laundry, prepare simple meals, shop for groceries, drive, and fish and had been able to return to work as a security guard (a light-exertion job) after the SSA had initially denied his claims. Tr. 20. Substantial evidence supports those observations. Tr. 37–38, 208–11.

The ALJ also found that the medical evidence and objective findings "fail to provide strong support for [Mr. Robbins]'s allegations of disabling symptoms and limitations." Tr. 20–21. As explained earlier, the ALJ discussed medical records showing that several doctors (Drs. Buckingham, Hentschel, Lindquist, and Sternberg) had been unable to identify the cause of the alleged severity of his pain. Tr. 21, 291, 297–98, 388–89. She also discussed other records showing relatively normal physical examinations. Tr. 21–22, 386–90, 399–402, 585–87. She observed that there was no objective medical evidence that Mr. Robbins's condition had significantly worsened since the SSA had denied his prior claims. Tr. 22. As she stated earlier in her decision, the physician interpreting the 2011 CT scan found no significant changes from the 2007 MRI. Tr. 22, 513. Finally, the ALJ observed that no physician had told Mr. Robbins that he could not work, and his primary-care physician and a consulting pain specialist had recommended exercise. Tr. 22, 46, 291,

389–90. In short, she provided several reasons for not fully crediting his statements concerning the intensity, persistence, and limiting effects of his pain, and substantial evidence supports them.

## VII.   Recommendation

Substantial evidence supports the ALJ's decision to reject the opinions from Atlas Physical Therapy and to partially discredit Mr. Robbins's testimony. Thus, I recommend that the Court issue the following decretal:

(1)    The Court **affirms** the Commissioner's decision.

(2)    The Court directs the Clerk of Court to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **affirming** the Commissioner's decision and close the file.[5]

**Entered** in Jacksonville, Florida on October 21, 2014.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    Counsel of Record

---

[5]Either party may file and serve specific written objections to this report and recommendation within 14 days of service. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 6.02(a). Failure to do so may alter the scope of direct and appellate review. *See* Fed. R. Civ. P. 72(b)(3); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).